# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| SHEILA FAHEY, individually and on behalf of a class of similarly situated individuals,<br><br>            Plaintiff,<br><br>   v.<br><br>CAREER EDUCATION CORPORATION, a Delaware corporation,<br><br>            Defendant. | Case No. 10 CV 05635<br><br>Honorable James B. Zagel<br><br>Magistrate Judge Young B. Kim |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Defendant Career Education Corporation ("CEC") asks this Court to effectively close the door to consumer class action suits. CEC made a "pick off" attempt in this case the day after it was filed in state court, and when Plaintiff accepted it, CEC balked. CEC changed attorneys, and its new counsel changed the terms of the offer, stating that he did not have the authority to agree to an injunction applicable to CEC's business practices generally. CEC's new counsel offered an admittedly "narrowed" injunction, thus changing the terms of the original "offer" subsequent to the filing of a class certification motion, which Plaintiff had filed long before this new offer. This Court held an evidentiary hearing to determine whether a settlement agreement was ever reached, and found that none had.

CEC, despite this background, now asks the Court to find Plaintiff's claim moot based on its initial "pick off" attempt, despite its disavowal of that offer, its refusal of Plaintiff's acceptance, its later counteroffer, the intervening class certification motion, and the Court's October 15, 2010 ruling. In short, CEC is asking this court to deny plaintiffs any meaningful access to the courts—CEC is claiming the right to make a settlement offer which binds plaintiffs but not itself. The Court should reject CEC's argument.

## FACTS

CEC's statement of facts glosses over issues that are dispositive in this case and conveniently ignores both this Court's rulings and statements of its own counsel. Although the Court is familiar with the history of this litigation from the October 15, 2010, evidentiary hearing and accompanying briefing,[1] the mileposts that demonstrate the path of CEC's "offer" are informative. Approximately eighteen hours after Ms. Fahey filed her Complaint in the Circuit Court of Cook County, Illinois, Defendant, through its prior counsel Bart Murphy of Ice Miller LLP, sent Plaintiff a purported "settlement offer" on August 5, 2010. That same day, Plaintiff moved for class certification in the Circuit Court. (*See* Motion for Class Certification, a true and accurate copy of which is attached as Exhibit 1.)

On August 19, 2010, Plaintiff attempted to accept this offer, sending an acceptance letter and a proposed injunction to Murphy. But the case did not settle. Instead, CEC changed counsel, and Wilson, CEC's new counsel, removed this case and began serially changing the injunctive relief CEC purportedly "offered" to Plaintiff.[2]

On September 7, 2010, Wilson discussed the case on the phone with Plaintiff's counsel. During the conversation, Wilson stated that he did not have authority to enter into a settlement with an injunction that applied to CEC's business practices generally. Plaintiff's counsel responded with an email to Wilson, stating: "To memorialize our conversation, I asked you if your client was willing to enter the proposed injunction as offered. You indicated that you did

---

[1] Attached as Exhibit 2 hereto is a true and accurate copy of the Transcript of Proceedings from the evidentiary hearing on October 15, 2010, and the documents discussed therein have been produced in the several filings leading up to that hearing in Docket Numbers 10, 13, 15, 18, 22, 24, and 26.

[2] In Plaintiff's Response in Opposition to Defendant's Motion to Strike Evidentiary Hearing and To Quash Subpoenas, Dkt. 22, she describes the *seven* different statements by CEC as to what injunctive relief CEC offered leading up to the evidentiary hearing.

not have authority to do so and that your client was not interested in an injunction that would apply to its practices generally (as opposed to with regard to our individual clients)." Wilson responded to the email with a new offer the following day. He stated that he "had a chance to discuss this matter in more detail with Career Education. Enclosed is a revised proposed injunction for your review. As you can see, I have limited the scope of the injunction to the four individuals who were clients of your firm at the time of the filing of the *Fahey* lawsuit." A true and correct copy of the email chain containing Jay Edelson's September 7, 2010 email to Wilson and Wilson's September 8 reply is attached hereto as Exhibit 3.

When these actions were brought to the attention of this Court, it ordered an evidentiary hearing about whether any settlement occurred as a result of Plaintiff's attempted acceptance of CEC's August 5th "offer." An exchange between Wilson and the Court showed that CEC did not intend to offer a general, or "class-wide" injunction, as stated in its August 5th letter, and precipitated the evidentiary hearing:

> **The Court**: Okay. Stop. Is the case settled?
>
> **Mr. Wilson**: Here's the status, Your Honor: We've offered them $1,500 for each call, there were six, or text messages. And, second, they sent us a class-wide injunction. We agreed to an injunction as to each individual, we would not contact them anymore, and we got hung up on that injunction and that's where things stand. We've sent them a revised injunction and we want to work that out.

(Sep. 30, 2010, Transcript, at 4; a true and correct copy of the transcript is attached hereto as Exhibit 4). At the evidentiary hearing, Plaintiff's counsel recounted how he believed that Plaintiff had accepted CEC's August 5th offer on August 19th, only to later have CEC's counsel state he did not have authority to enter into the injunction that was offered. Plaintiff's counsel continued to describe the endless changes that were made by CEC's counsel as to what injunctive relief CEC offered or did not offer. (*See* Ex. 2, pgs. 4-13.)

3

Despite not being the author of CEC's August 5th letter, Wilson stated that it was CEC's position that there were six "conditions" of acceptance in its offer,[3] only two of which were accepted by Plaintiff. (*Id.* at 13-16.) Wilson concluded that because Plaintiff only accepted some of the six "conditions" in the August 5th offer, that her attempted August 19th acceptance was in fact a counteroffer. (*Id.* at 19.) CEC's September 8, 2010, revised offer of settlement truncating the scope of the injunctive relief, according to basic contract law and the position espoused by Wilson under oath, must also have been a counteroffer by CEC, and thereby extinguished the original "offer" in the August 5th letter. *See infra*, at 8.

After hearing testimony from counsel for the Parties and considering the correspondence and other evidence surrounding these events, the Court held there was no settlement because "[n]obody was very clear on exactly what the injunctive relief should be," and there was an "enormous gap and the significance between the minimum content of the injunction and the maximum content of the injunction," therefore, "the usual rule which says you can accept as a settlement agreement a document that leaves one term subject to negotiation" does not apply in this case as "even with the acceptance of the broader injunction, the issue is not really over if you look at the papers." (Ex. 2, pg. 29.)

At the evidentiary hearing, Plaintiff's counsel sought clarification from the Court on its ruling—in part to avoid later claims from CEC that the case was moot—and inquired of the Court as follows:

---

[3] Plaintiff notes that Murphy, the offeror of the letter in question, has taken a completely opposite view of the necessary conditions of acceptance in an identical letter. *See Damasco v. Clearwire Corp.*, No. 10-cv-3063 (N.D. Ill.), Dkt. 19, pg. 8 ("The request for a release is not a mandatory term and the Settlement Offer is enforceable without the requested release."); *see also Damasco*, No. 10-cv-3063 (N.D. Ill.), Dkt. 30, pg. 7 (stating that the execution of a release or settlement agreement was a request and not a condition precedent to acceptance.)

4

> **Mr. McMorrow:** Is the Court ruling that what was in the - - obviously, the question here, they're trying to moot this case with the offer.
>
> **The Court:** Right.
>
> **Mr. McMorrow**: And, you know, the real question here is, could it have been accepted, and is the Court saying that it couldn't have?
>
> **The Court:** I'm saying that it was not accepted and that's enough under these particular circumstances to moot nothing.
>
> **Mr. McMorrow:** I'm sorry?
>
> **The Court:** There is nothing under the circumstances of this case which would allow a Court to find that this was mooted.
>
> **Mr. McMorrow:** Okay.
>
> **The Court:** And sometimes it does moot the case, but in these circumstances I don't think I could do that equitably. So this case is back to square one.

(*Id.* at 31.) Undeterred by this exchange, CEC moved to dismiss the action claiming that its August 5, 2010, letter moots this case.[4] (*See* Dkt. 33.)

## ARGUMENT

### A. The terms of the injunctive relief described in the August 5th letter were indefinite and could not be the basis of a valid offer

According to the Court's decision in *Damasco v. Clearwire Corp.,* which is cited by Defendant (*see* Def.'s Mot. at 4), "a contract is enforceable if it is ascertainable from the terms of the contract what each party has agreed to do" and "may be enforced even though some contract terms may be missing or left to be agreed upon." No. 10-cv-3063, 2010 WL 3522950, at *3

---

[4] Any attempt by CEC to claim, as it does in its Motion to Dismiss, that the "mootness" being discussed by the Court was about whether any breach of the settlement occurred so that sanctions against CEC were warranted is belied by Wilson's statements to the Court at the evidentiary hearing in which Mr. Wilson attempted to limit the scope of the Court's ruling so that it could not have an effect on the Court's reconsideration of its ruling in the *Damasco* case, a case dealing only with the issue of mootness.

5

(N.D. Ill. Sept. 2, 2010) (*citing Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 983 (Ill. 1991)). Here, the Court ruled at the conclusion of the evidentiary hearing that "the usual rule which says you can accept as a settlement agreement a document that leaves one term subject to negotiation" does not apply to the instant matter, as "even with the acceptance of the broader injunction, the issue is not really over if you look at the papers." (Ex. 2, pg. 29.) CEC's motion assumes that its August 5th letter was a valid offer without any analysis, and without discussing this Court's October 15th ruling. The law cited in *Damasco*, however, demonstrates that the August 5th letter was not a valid offer and could not moot this case.

The Court in *Damasco* undertook an analysis to determine if the defendant's offer in that case was sufficiently definite to constitute a valid offer. 2010 WL 3522950, at *2-4. "For a contract to be enforceable, the material terms of the contract must be definite and certain." *K4 Enterprises, Inc. v. Grater, Inc.*, 914 N.E.2d 617, 624 (Ill. App. Ct. 2009). A contract may be enforced if it can be determined from the terms what each party has agreed to do. *Academy Chicago Publishers*, 578 N.E.2d at 983; *see also Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987). It is "elementary law" that for an offer to be valid, it must be definite enough in its terms so that the actions to be performed by the parties are reasonably certain. *Hazeltine Corp. v. Zenith Radio Corp.*, 100 F.2d 10, 13 (7th Cir. 1938); *see also Ner Tamid Congregation of North Town v. Krivoruchko*, 638 F. Supp. 2d 913, 920 (N.D. Ill. 2009).

Here, the Court expressly found that there was an "enormous gap" concerning the scope of the injunctive relief offered in the August 5th letter, and that as a result no settlement contract could have been formed. As this Court found, the scope of injunctive relief offered in the August 5th letter could be interpreted as, at a minimum, an injunction as to the named plaintiffs only, to, at maximum, an injunction that altered the Defendant's business practices generally.

6

(Ex. 2, pg. 28.) The meaning of the term "injunctive relief" in the August 5th letter was far from certain (particularly to CEC), and could not form the basis of a valid offer. Defendant's Motion to Dismiss offers no clarification—CEC does not even attempt to specify what it meant by "injunctive relief" when it made the offer. (Def.'s Mot. at 2-3). Instead, CEC is intentionally vague in its description of the injunctive relief offered—indeed, this Court has already ruled that its indefinite terms could not constitute an offer and create a settlement agreement.

Since the August 5th letter was incapable of forming a settlement agreement, it is likewise incapable of mooting this case. This conclusion is supported by the Court's exchange with Plaintiff's counsel during the October 15th hearing where the Court said, "[t]here is nothing under the circumstances of this case which would allow a Court to find that this was mooted." (Ex. 2, pg. 31).[5] The only reasonable reading of the testimony given at the evidentiary hearing and the Court's findings is that no settlement was reached, and that under the facts of this case it was not moot as a result of CEC's August 5, 2010, pick-off attempt.

If a defendant is able to moot a case with a settlement "offer" that cannot be accepted, this plaintiff and future putative plaintiffs are left with no recourse; the defendant can achieve victory without having to litigate the case or even satisfy the individual plaintiff's claim. CEC's offer of injunctive relief was a material term to this offer, and was also hopelessly indefinite. Based on the law established in *Damasco*, CEC's August 5th letter cannot moot this case.

### B. CEC's August 5th letter was not a valid offer because it required approval from CEC's "corporate headquarters"

CEC's motion fails for a related reason. This Court found in its Sep. 2, 2010, Order in *Damasco* that "a manifestation of willingness to enter into a bargain is not an offer if the bargain

---

[5] Plaintiff is aware that this Court has described this part of the hearing as "dicta," but respectfully includes it in this Response both to give the Court a formal opportunity to address this argument, and to preserve the record.

7

cannot be concluded until the offeror makes a further manifestation of assent." 2010 WL 3522950, at *3 (emphasis omitted). The undisputed testimony here shows that CEC never gave authority for the August 5th offer. (*See* Ex. 3, Ex. 4, at 4.) CEC demonstrated that it was not willing to enter into a bargain, and never gave counsel authority to make an offer of injunctive relief. Where "the so-called offer is not intended to give the so-called offeree the power to make a contract there is no offer." *La Salle Nat. Bank v. Vega*, 520 N.E.2d 1129, 1133 (Ill. App. Ct. 1988) (*citing McCarty v. Verson Allsteel Press Co.*, 411 N.E.2d 936, 942, 943 (Ill. App. Ct. 1980)). Because CEC's August 5th letter was never a valid offer of complete relief, and because it was not intended to give Plaintiff the power to create a contract, it could not moot this case.

As explained in *Damasco*, an offer that requires further manifestations of assent by the offeror is not an offer at all. 2010 WL 3522950, at *3 (*citing Cobb-Alvarez v. Union Pacific Corp.*, 962 F. Supp. 1049, 1054 (N.D. Ill. 1997)); *see also Vill. of S. Elgin v. Waste Mgmt. of Illinois, Inc.*, 810 N.E.2d 658, 672 (Ill. App. Ct. 2004) (*citing Restatement (Second) of Contracts § 26 (1981)*). According to the Restatement (Second) of Contracts, "[i]f the addressee of a proposal has reason to know that no offer is intended, there is no offer even though he understands it to be an offer. 'Reason to know' depends not only on the words or other conduct, but also on the circumstances . . . ." *Rest. (Second) of Contracts* § 26, cmt. a.

Counsel for CEC explicitly stated that CEC never gave the authority to make the purported offer of injunctive relief in the August 5th letter. (*See* Ex. 2, pg. 10; *see also* Ex. 3, Ex. 4, at 4.) In other words, further manifestations of assent were required from CEC before the August 5th letter became a valid offer. CEC's conduct in this case also demonstrates that it never intended its offer of August 5th as binding. Instead of the case being resolved after Plaintiff attempted to accept the offer on August 19th, CEC removed the case to federal court

8

and began to repeatedly change the scope of the injunctive relief. Negotiations over the scope of the injunction continued for over a month. These are clear manifestations that CEC never intended to honor the "offer" in the first place. Based on the law stated in *Damasco*, the August 5th letter was not an offer and consequently could not moot this case.

### C. CEC's August 5th "offer" cannot moot Plaintiff's case because the subsequent counteroffers terminated Plaintiff's power of acceptance

Even if this Court finds that the August 5th letter was an offer, CEC's motion fails; its argument that the August 5th offer moots Plaintiff's case ignores basic tenants of contract law. CEC's counsel stated under oath that he not only considered Plaintiff's acceptance to be a "counteroffer," but then made his own counteroffer to settle the case if Plaintiff agreed to a narrow injunction limited to four individuals represented by Plaintiff's counsel.

For the August 5th offer to moot anything, it must be and remain a valid offer. *See Damasco*, 2010 WL 3522950, at *2-3. CEC disingenuously claims in its motion that the procedural circumstances between *Damasco* and this case are "nearly identical." (Def.'s Mot. at 1). In this case, however, CEC's attempts to moot Plaintiff's claim involve three subsequent events that are distinct from *Damasco*: (1) the filing of a Motion for Class Certification in this case on August 5, 2010, (2) Plaintiff's acceptance August 19, 2010, letter, and (3) Defendant's new offer of September 8, 2010. CEC cannot reach back to its August 5th letter to moot this case, given the subsequent events.

"A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer." *Reich v. Everyday Flood Control Corp.*, No. 94-c-2331, 1995 WL 443948, at *3 (N.D. Ill. July 25, 1995) (*citing Rest. (Second) of Contracts* § 39(1) (finding a counter-offer was created when defendant modified the offer by deleting a provision and adding another); *see also*

9

*Nomanbhoy Family Ltd. P'Ship v. McDonalds Corp.*, 579 F. Supp. 2d 1071, 1092 (N.D. Ill. 2008) ("Under Illinois law, a response to an offer to enter into a contractual relationship that does not comply strictly with it—that is not the 'mirror image' of the offer—is not an acceptance, but a counteroffer.") A "counter offer constitutes a rejection of the original offer," and terminates the offeree's power of acceptance. *Forney v. TTX Comp.*, No. 05-cv-6257, 2006 WL 643054, at *2 (N.D. Ill. Mar. 8, 2006) (*quoting Sementa v. Tylman*, 595 N.E.2d 688 (Ill. App. Ct. 1992), *and Rest. (Second) of Contracts* § 39(2)); *see also Dresser Industries, Inc. v. Pyrrhus AG*, 936 F.2d 921, 927 (7th Cir. 1991) ("Illinois courts have consistently held that accepting an offer by requesting modification of the terms constitutes a rejection of the original offer and a counter-offer").

CEC's August 5th letter stated that "Defendant will also agree to the injunctive relief sought by plaintiff in the complaint, namely to cease all wireless spam activities which defendant understands to mean to cease the transmission of text messages to mobile subscribers who have not granted it permission to send text messages." (Ex. 2, pgs. 14, 17); *see also Damasco*, 2010 WL 3522950, at *3 (finding that this exact "proposed injunctive relief . . . makes clear that neither Plaintiff nor any other member of the class of persons will be subject to further violations by Defendant.") While CEC's counsel testified that he considered this just one of six nonnegotiable conditions of its August 5th letter, he nevertheless recognized that it was the central focus of the evidentiary hearing. (Ex. 2, pgs.14-15.)

Wilson continued his testimony, stating that he considered Plaintiff's August 19th acceptance a "counteroffer," *id*. at 19, which would have terminated Plaintiff's ability to accept the initial August 5th offer. Instead of claiming that the case was mooted by the August 5th offer at that time, CEC thereafter made a subsequent offer to limit the scope of the injunctive relief to

10

the individuals named in Plaintiff's August 19th letter. (*See id.* at 20-21.) The new offer itself acknowledges that what was being offered is less than the original offer; Wilson's use of the phrase "I've limited the scope" makes this point consciously and without equivocation:

> I've had a chance to discuss this matter in more detail with Career Education. Enclosed is a revised proposed injunction for your review. As you can see, I've limited the scope of the injunction to the four individuals who are clients of your firm at the time of the filing of the *Fahey* lawsuit.

(*Id.* at 21.) This email offers to settle on different terms than those proposed in the August 5th letter, whether Plaintiff's August 19th acceptance was valid or not; it is a counteroffer which extinguished its original offer. As a result, CEC cannot now claim Plaintiff's case is moot based on a void offer. Defendants cannot be permitted to "experiment" with settlement offers before choosing which one to rely on to moot a plaintiff's claim.

CEC's September 8, 2010, offer likewise cannot moot Plaintiff's case because a Motion for Class Certification was pending at the time it was made. Plaintiff filed her Motion for Class Certification over a month before this offer was made. (*See* Ex. 1.) An offer of complete relief to an individual plaintiff cannot moot her class action complaint after she has moved for class certification. *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994); *see also Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 546-47 (7th Cir. 2003) ("the mooting of a named plaintiff's claim in a class action by the defendant's satisfying the claim does not moot the action … so long as a motion for class certification has been made and not ruled on") (internal citation omitted). Accordingly, CEC's motion should be denied.

**D.    Under Illinois law, CEC's August 5th offer could not have mooted Plaintiff's case because she pursued class certification with "reasonable diligence"**

Even if this Court decides that CEC's August 5th letter constituted a valid offer of complete relief to Ms. Fahey, the procedural circumstances of this case nevertheless call for

11

CEC's motion to be denied. CEC's August 5th offer, and Plaintiff's almost instantaneous motion for class certification, occurred while this case was pending in the Circuit Court of Cook County. Because the relevant events occurred while this case was pending in state court, Illinois law regarding pick-off attempts should apply, not federal law. Under Illinois law, CEC's August 5th offer does not moot this case because Ms. Fahey acted with reasonable diligence in pursuing class certification, filing her motion one day after filing her class action complaint.

Defendant CEC spends its entire brief outlining federal case law regarding pick-off attempts, but spends practically no time explaining why federal law should apply at all. (*See* Def.'s Mot. 3-8). Defendant's reliance on *Damasco v. Clearwire* in urging application of federal law is misplaced—*Damasco* is distinguishable because in that case the plaintiff filed his class certification brief after that case was removed. 2010 WL 3522950, at *1. The TCPA is unique because it is a federal law that explicitly provides state courts with jurisdiction. *See* 47 U.S.C. § 227(b)(3) ("A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . . .") Illinois courts have interpreted this to mean that courts need not create "special procedural rules" to accommodate TCPA claims, and that "federal law must take state courts 'as it finds them,' because states 'have great latitude to establish the structure and jurisdiction of their own courts." *Italia Foods, Inc. v. Sun Tours, Inc.*, 927 N.E.2d 682, 693-94 (Ill. App. Ct. 2010), *appeal allowed,* 938 N.E.2d 521 (2010) (noting that "the if otherwise permitted" language reflects a congressional intention that federal claims remain subject to State procedural law.") (internal citations omitted).

Under Illinois law, a settlement offer of full relief does not moot a plaintiff's claim if the plaintiff moves for class certification with "reasonable diligence." *Barber v. Am. Airlines, Inc.,* 925 N.E.2d 1240, 1252-53 (Ill. App. Ct. 2010), *appeal allowed*, 932 N.E.2d 1028 (2010);

*Akinyemi v. JP Morgan Chase Bank, N.A.*, 908 N.E.2d 163, 171-72 (Ill. App. Ct. 2009). In terms of what constitutes reasonable diligence, the courts offer some guidance. *Compare Bruemmer v. Compaq Computer Corp.*, 768 N.E.2d 276, 283-285 (Ill. App. Ct. 2002) (finding that plaintiff failed to exercise reasonable diligence by filing class certification motion fifteen months after tender offer was made) *with Gelb v. Air Con Refrigeration & Heating, Inc*., 761 N.E.2d 265, 269 (Ill. App. Ct. 2001) (reversing grant of defendant's motion to dismiss based on mootness where plaintiff initiated class certification discovery two weeks after complaint was filed, which was stayed, and tender offer was made fifty six days after complaint filing). In this case, it cannot be argued that Ms. Fahey lacked "reasonable diligence" in pursuing class certification—she filed her class certification brief one day after filing her Complaint. As such, Plaintiff's claim is not mooted by Defendants settlement offer, and CEC's motion should be denied.

### E. Even if this Court finds CEC's offer valid and complete, dismissal is not warranted because the exceptions to the mootness doctrine apply

This case is a prime example warranting application of exceptions to the mootness doctrine. CEC attempted to moot Ms. Fahey's claim, and the claims of any other potential plaintiffs, the day after she filed her Complaint, and hours before she filed her Motion for Class Certification. In cases such as this, where recovery is small and there is little incentive for individuals to file claims, the class action procedure is the only way for aggrieved persons to vindicate their rights and hold defendants accountable. CEC's current strategy thwarts Rule 23 and denies plaintiffs access to the Courts. The Seventh Circuit has recognized this problem and has found that exceptions to mootness in a class action context are applicable.

"There may be times when a proposed named plaintiff's claims become moot before the district court can reasonably be expected to rule on a certification motion." *Kazarov v. Achim*, No. 02 C 5097, 2003 WL 22956006, at *3 (N.D. Ill. Dec. 12, 2003) (*citing Sosna v. Iowa*, 419

13

U.S. 393, 402 n. 11 (1975)). In such circumstances, the court may allow "picked-off" plaintiffs to continue representing classes of those similarly injured, but who have not been given the individual relief specifically designed by defendants to moot a case. This rule is applicable to cases when a defendant's conduct is "capable of repetition, yet evading review," (*id.*), when the plaintiff is forced to accept an "involuntary settlement," or when the claim is "inherently transitory." *Wrightsell v. Cook Cnty, Ill.*, 599 F.3d 781, 783 (7th Cir. 2010) (collecting authorities and citing approvingly to other circuits).

District courts in this Circuit have expressed concern over the effects of pick-off settlement offers in class action cases. *See Asch v. Teller, Levit & Silvertrust, P.C.*, 200 F.R.D. 399, 400-401 (N.D. Ill. 2000) (noting that this tactic "will not promote the efficient and fair management of class action cases" and that it forces plaintiffs to move for class certification at the same time they file their complaint); *Wilder Chiropractic, Inc. v. Pizza Hut of S. Wis., Inc.*, No. 10-cv-229, 2010 WL 4925270, at *7 (W.D. Wis. Dec. 6, 2010) ("If plaintiff does not have an opportunity to file a motion for class certification after an offer is made, the defendant has unilateral control to moot the lawsuit at any time.) In both these cases, the plaintiff avoided mootness by moving for class certification before the time to accept the Rule 68 offer expired. There is no practical distinction between Rule 68 offers and settlement offers like the one made in this case, except that under Rule 68, a plaintiff is afforded an "appropriate degree of symmetry" to the defendant's gamesmanship, (*Asch*, 200 F.R.D. at 401) while if a defendant simply makes a settlement offer, a plaintiff is left with no recourse. Such an arbitrary and harsh result as dismissal is inequitable.

As shown by the actions of Defendant CEC in this case, it will attempt to moot claims by attempting to make offers to unnamed potential plaintiffs in the hopes of exhausting the number

14

of willing class representatives. The very purpose of CEC's "offer" was to evade review, and, as shown in this case, leave plaintiffs with no recourse to pursue even their individual claims. Further, CEC's numerous offers of injunctive relief included offers to cease wireless transmissions of text messages to only the individually named plaintiffs—not to stop their illegal practices generally. See Ex. 2, pg. 21. In this case, unlike *Damasco*, CEC has never agreed to stop sending spam text messages, voluntarily or otherwise, and is free to continue its activities that gave rise to this lawsuit.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss, and grant any such additional relief that the Court deems reasonable and just.

Dated: January 19, 2011               Respectfully submitted,

                                      **SHEILA FAHEY**

                                       /s/ Michael J. McMorrow
                                      One of her attorneys

                                      Michael J. McMorrow
                                      Ryan D. Andrews
                                      EDELSON MCGUIRE, LLC
                                      350 North LaSalle Street
                                      Suite 1300
                                      Chicago, Illinois 60654
                                      Tel.: (312) 589-6370
                                      Fax: (312) 589-6378